# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BARNES & THORNBURG LLP | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 09 C 7846 |
| | ) | |
| THE COMPAK COMPANIES LLC and BMJ PARNTERS, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |
| DUOTECH PACKAGING, LLC and DUOTECH HOLDINGS, INC. | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | No. 09 C 7910 |
| | ) | |
| THE COMPAK COMPANIES LLC and BMJ PARNTERS, | ) | |
| | ) | |
| Appellees. | ) | |

## **MEMORANDUM OPINION**

Before the court are the related bankruptcy appeals of DuoTech Packaging, LLC and DuoTech Holdings, Inc. (collectively, "DuoTech") and Barnes & Thornburg, LLP. We affirm the bankruptcy court's decision denying appellants' motions to turn over interpleader funds and remand the case to the bankruptcy court to explain its reasons for denying the appellants' joint motion to reconsider.

## BACKGROUND

In 2003 BMJ Partners ("BMJ") purchased certain assets "free and clear of all liens, claims, encumbrances and interests" from bankruptcy debtor Compak Corporation ("Compak") pursuant to 11 U.S.C. § 363. BMJ then assigned those assets to appellee, The Compak Companies, LLC ("TCC"). Among Compak's assets at the time of its bankruptcy sale was a patent for a container designed to hold wine and communion wafers for religious services (U.S. Patent No. 5,246,106 (the "'106 patent")). The Compak Co., LLC v. Johnson, 415 B.R. 334, 336 (N.D. Ill. 2009). In August 2001 Compak agreed to license the '106 patent, and sublicense three additional patents, to appellant DuoTech. (See License Agreement, dated August 29, 2001, attached as Ex. E to TCC's Consolidated Brief.) Compak purportedly licensed these other patents from another party to the License Agreement, PatPak Corporation. (Id.) After acquiring Compak's assets TCC sued DuoTech for patent infringement on the grounds that the license agreement was invalid and/or extinguished in the bankruptcy sale. We referred TCC's infringement claim to the bankruptcy court because, we concluded, it was "related to" Compak's bankruptcy. See The Compak Co., LLC v. Johnson, No. 03 C 7427, 2004 WL 2034083, *3 (N.D.Ill. Sept. 2, 2004). The bankruptcy court entered proposed findings of fact and conclusions of law recommending that we grant DuoTech's motion for summary judgment. We adopted the bankruptcy court's

recommendation, concluding that the License Agreement was valid and that it survived the bankruptcy sale.  Compak, 415 B.R. at 343.[1]

Shortly before TCC filed its infringement lawsuit DuoTech filed an interpleader complaint in the bankruptcy court claiming that it did not know which party was entitled to royalties under the License Agreement.  In conjunction with its interpleader complaint DuoTech deposited royalty payments in an account maintained by the clerk of the bankruptcy court.[2]  After we granted DuoTech's summary judgment motion the parties filed cross-motions in the case now on appeal to obtain the funds in the royalty account.  (Appellant Barnes & Thornburg is a law firm that previously represented DuoTech in this litigation and holds an attorney's lien for unpaid legal service against any recovery by DuoTech.)  In an order dated October 30, 2009 the bankruptcy court held that TCC was entitled to all the funds in the interpleader account over appellants' objection that DuoTech was entitled under the License Agreement to offset its defense costs against royalty payments.  The next day DuoTech and Barnes & Thornburg jointly filed a motion to reconsider, which the bankruptcy court granted in part: it stayed enforcement of its order pending appeal but denied

---

[1]  We also concluded that PatPak did not have any rights to the licensed patents because PatPak's co-defendant Jimmie Johnson had previously licensed those same patents to Compak.  Compak, 415 B.R. at 345 (concluding that PatPak's purported rights were a nullity because Johnson "could not convey the same property more than once").

[2]  As of June 2009 the balance of that account was $270,183.57.

appellants' substantive challenge to its ruling. In separate appeals raising many of the same arguments DuoTech and Barnes & Thornburg challenge both rulings.

**DISCUSSION**

**A.   Standard of Review**

We review the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. Matter of Birkenstock, 87 F.3d 947, 951 (7th Cir. 1996). "Mixed questions of law and fact, that are driven by factual inquiries and where there is no compelling need for uniformity and clarity in the application of legal principles by the courts, are also reviewed under the clearly erroneous standard." In re Thunderdome Houston Ltd. Prtnsp., No. 98 C 4615, 2000 WL 889846, *5 (N.D. Ill. June 23, 2000) (citing In re Rovell, 194 F.3d 867, 871-72 (7th Cir.1999)).

**B.   Whether PatPak and/or Compak "Elected Not to Defend."**

The parties agree that the following provision of the License Agreement is dispositive:

> Each party shall promptly notify the other in writing in the event that **a third party shall bring a claim of infringement against COMPAK, PatPak or DUO-TECH,** either in the United States or in any foreign country in which there are Property Rights.  If the alleged infringement is so substantial as to threaten the competitive position of DUO-TECH and/or DUO-TECH is temporarily enjoined from exercise of its license hereunder, **and if COMPAK or PatPak elects not to defend against such claim** and not to obtain a license to permit DUO-TECH to exercise its license free of such claim, then DUO-TECH may in its own name defend such claim and may compromise, settle or otherwise pursue such defense in such a manner and on

>such terms as DUO-TECH shall see fit, and shall offset any expenses incurred therewith against Royalties otherwise owed to COMPAK then or in the future, and may seek damages from COMPAK or PatPak for breaches of this Agreement, including the representations of Section 8 hereof. COMPAK, at its own expense and through counsel of its selection may become a party to such defense and/or settlement and compromise. In any event, COMPAK and/or PatPak shall have the right to defend, at its own expense, any such third party claim or action and to settle or compromise the same in such manner as it shall see fit. DUO-TECH may participate in such litigation or claim on its own behalf at its own expense.

(License Agreement § 9(d) (emphasis added).) TCC argued below that it was not a "third party," having stepped into Compak's shoes after the bankruptcy sale. (TCC's Reply in Supp. of Its Motion for Turnover ¶ 12 (DKT # 218).) The bankruptcy court concluded that the phrase "third party" in § 9 means a party other than Compak, PatPak, or DuoTech, rather than a non-party to the agreement. (Trans. of Proceedings, dated Oct. 29, 2009, attached as Ex. B to Barnes & Thornburg's Brief, at 4-5.) Accordingly, DuoTech's expenses in defending TCC's infringement claim were potentially eligible to be offset against royalties owed to TCC. Id.[3] None of the parties has challenged that portion of the bankruptcy court's ruling. They focus instead on the bankruptcy court's conclusion that the evidence did not support a finding that Compak and/or PatPak "elect[ed] not to defend."

---

[3]/ TCC's scattershot brief includes an argument that the appeal is "moot" because the bankruptcy court concluded that it was not a party to the license agreement. The bankruptcy court clearly concluded otherwise. (Trans. of Proceedings, dated October 29, 2009, at 4 (observing that TCC "became a party to the contract by the sale and assignment").)

The bankruptcy court concluded Compak's and PatPak's "failure to defend" did not establish their "election not to defend." (Trans. of Proceedings, dated Oct. 29, 2009, at 5.)[4] There is no dispute here about what the contract says, or what "elect" means: an election is a deliberate choice. See Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/elect ("elect" (verb): "to choose (as a course of action) especially by preference") (last visited on July 21, 2010). But the bankruptcy court was not persuaded that the evidence in the record (such as it was) supported a finding that PatPak and/or Compak had made such a choice. This is a mixed question of law and fact that we review for clear error. In re Thunderdome Houston Ltd. Prtnsp., 2000 WL 889846, at *5. Appellants argue that one may infer a choice not to do something from the fact that it was not done. But that is not the only possible inference in this case — DuoTech could have independently undertaken its own defense — and it was appellants' burden to establish that PatPak and/or Compak had "elected" not to defend. Cf. Richard A. Lord, Williston on Contracts § 38:26 (4th Ed. 2004) (the plaintiff bears the ultimate burden of showing that a condition precedent is satisfied). Appellants cite DuoTech's interpleader complaint as evidence that DuoTech claimed offset

---

[4] We reject DuoTech's cursory and unsupported argument that the bankruptcy court somehow exceeded its authority by considering an issue that was clearly suggested by the License Agreement (but not specifically addressed by the parties). (DuoTech Brief at 6.)

under § 9(d) all along.  But the paragraph they cite refers to DuoTech's status as a "disinterested stakeholder;" it does not cite or in any way allude to the License Agreement or § 9(d).  (See Interpleader Compl. ¶ 37 (DKT# 1); see also id. at ¶ 31.)  We also note that under § 9(d) the infringement claim must be "so substantial as to threaten the competitive position of DUO-TECH." (License Agreement § 9(d).)  This is a nebulous standard and one that invites debate, or at least discussion.  Yet appellants did not cite any evidence indicating that the parties to the license agreement had ever discussed whether TCC's lawsuit met this standard.  In short, appellants assumed at their own risk that a necessary condition of offset was satisfied.  We conclude that the bankruptcy court's decision denying appellants' motions for disbursement was not clearly erroneous.[5]

After the bankruptcy court orally ruled on their motion appellants quickly obtained an affidavit from PatPak's bankruptcy trustee stating that PatPak had elected not to defend DuoTech for financial reasons.  The bankruptcy court denied the substance of the appellants' motion to reconsider its ruling without explanation.  The parties analyze appellees' motion under Rule 59(e).  We review a decision denying a Rule 59(e) motion deferentially, see LB Credit Corp. v. Resolution Trust Corp., 49

---

[5] Our ruling makes it unnecessary to address TCC's alternative argument that PatPak and Compak did "defend" the infringement lawsuit.

F.3d 1263, 1267 (7th Cir. 1995), but we still must know why the bankruptcy court denied the motion.  We remand this case to the bankruptcy court to state its reasons for denying appellants' motion to amend the judgment.  See United States v. Guy, 140 F.3d 735, 736 (7th Cir. 1998) ("Ordinarily when a district judge fails to explain a nonobvious exercise of his discretion, the proper remedy is to remand the case for him to do so.").

### **CONCLUSION**

We affirm the bankruptcy court's ruling denying appellants' turnover motions.  This case is remanded to the bankruptcy court to state its reasons for denying appellants' motion to reconsider.

DATE:   August 4, 2010

ENTER:  _____
        John F. Grady, United States District Judge